# ORIGINAL

## In the United States Court of Federal Claims FILED

### No. 12-855 C

(Filed:  March 25, 2013)

MAR 2 5 2013

U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| DANNY SELLERS et al., | ) ) Lack of Subject Matter |
|  | ) Jurisdiction; RCFC 12(b)(1); |
| Plaintiffs, | ) Federal Tort Claims Act; |
|  | ) Tort Claims; Eighth Amendment; |
| v. | ) Constitutional Claims; Transfer to |
|  | ) District Court; Pro Se; Bad-Faith |
| THE UNITED STATES, | ) Conduct; Sanction Pursuant to |
|  | ) Court's Inherent Power |
| Defendant. | ) |
|  | ) |

Danny Sellers and Tyrone Nunn, Beaumont, TX, pro se.

Joseph A. Pixley, Trial Attorney, with whom were Stuart F. Delery, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

HEWITT, Chief Judge

I.    Background

Plaintiffs Danny Sellers and Tyrone Nunn, appearing pro se, filed the above-captioned case on December 10, 2012,[1] which they have identified as a "class action"

---

[1] Plaintiffs neither paid the court's filing fee nor submitted an application to proceed in forma pauperis. Nevertheless, the court infers a request to proceed in forma pauperis and GRANTS that request for the limited purpose of determining whether the court has jurisdiction over this case, notwithstanding that at least one of the plaintiffs is barred from proceeding in forma pauperis under 28 U.S.C. § 1915(g) (2006).

Pursuant to 28 U.S.C. § 1915(g), a prisoner is barred from bringing a civil action in forma pauperis "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,

suit. See Fed. Tort Claim (Complaint or Compl.), Docket Number (Dkt. No.) 1, at 1 (capitalization and emphasis omitted); see also id. at 2 (stating that the plaintiffs "bring[] this claim as a class action"). Plaintiffs, who are incarcerated at the Federal Correctional Institution-Low in Beaumont, Texas, see id. at 3 (referencing "F.C.I.LOW"), 8 (certificate of service giving plaintiffs' location as Beaumont, Texas); id. at Ex. 2 (Federal Bureau of Prisons form for request of administrative remedy identifying the relevant institution as "F.C.I. LOW") 1, allege that their "future health" is threatened by incarceration "in a Carcinogenic . . . environment," Compl. 1. More specifically, plaintiffs allege that defendants--who are listed in the caption as the United States, Eric Holder in his capacity as Attorney General, or M. Martin and Carlos Rivera, see id.; cf. id. at 3 (describing defendants "as the wardens of F.C.I.LOW")--"subjected the plaintiffs to a []carcinogenic living environment against their will[s] for prolonged periods of time," owing "to the use of scented fabric soft[e]ners and scented laundry detergent in the unit washers," id. at 3 (capitalization and emphasis omitted).

More specifically, plaintiffs complain that their clothes were washed and dried using these products and that "[t]he unit dryers were not ventilated[,] causing . . . fumes to be emitted . . . [and] carried through out [sic] the entire unit." Id. Plaintiffs state that "[t]he unit washer and dryers operated from 5 AM to 12 PM [sic] at night . . . spewing out over 25 toxic volatile organic compounds" and "seriously threaten[ing] the future health of the plaintiffs." Id. In support of their position, plaintiffs have attached as Exhibit 1 to their Complaint a page from Men's Health magazine, which warns readers that researchers at the University of Washington found that, "[a]fter washing laundry in scented detergent and drying it with scented softener sheets, . . . the dryer exhaust contained 25 toxic volatile organic compounds." Id. at Ex. 1 (Men's Health article) 1. The article suggests that readers "[r]educe [their] risk by using fragrance-free products,

---

unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The court observes that plaintiff Tyrone Nunn, while incarcerated, has brought three or more claims that were dismissed as frivolous. See, e.g., In re Nunn, No. 12-40257, slip op. at 2-3 (5th Cir. May 3, 2012) (per curiam) (sanctioning plaintiff for filing a petition for writ of mandamus "three times over the past twelve months" and stating that "Nunn's challenge to the authority of the federal district courts over federal criminal offenses is frivolous"); Nunn v. Martin, No. 1:11-CV-448, slip op. at 1 (E.D. Tex. Dec. 14, 2011), Docket Number (Dkt. No.) 18 (adopting report of magistrate judge, who recommended dismissing the case pursuant to 28 U.S.C. § 1915 "as frivolous and for failure to state a claim upon which relief may be granted"); Nunn v. Rivera, No. 1:12cv233, slip op. at 1 (E.D. Tex. May 30, 2012), Dkt. No. 4 (dismissing case pursuant to 28 U.S.C. § 1915(g)); see also infra Part III.C (discussing instances of filing in bad faith). Plaintiff Danny Sellers has also brought at least one claim while incarcerated that was dismissed as frivolous. E.g., Sellers v. Martin, No. 1:11-CV-624, slip op. at 1-2 (E.D. Tex. Feb. 15, 2013), Dkt. No. 5 (adopting report of magistrate judge, who recommended dismissing the action "as frivolous and for failing to state a claim upon which relief may be granted"); see also Sellers v. Vasquez, No. 1:13cv21, slip op. at 4 (E.D. Tex. Feb. 13, 2013), Dkt. No. 4 (recommending that plaintiff's complaint be "dismissed as frivolous and for failing to state a claim upon which relief may be granted" in magistrate judge's report not yet ruled on by the court).

and if [their] dryer[s] vent[] outside, [by] keep[ing] nearby windows closed." Id.
Plaintiff Tyrone Nunn previously submitted a request to the prison to have the unit dryers
ventilated. See Compl. Ex. 2 (Federal Bureau of Prisons form for request of
administrative remedy, dated August 13, 2012) 1. Plaintiffs contend that "defendants are
still acting negligent for failing to make sure the unit dryers are all ventilated after
receiving our complaint." Compl. 4.

Plaintiffs now seek "$ 10 Billion Dollars for this negligent act by the defendants
acting under color of federal authority," id. at 4, and also claim that defendants' conduct
violates the Eighth Amendment of the United States Constitution, id. at 2. Plaintiffs
assert that jurisdiction in this court is proper pursuant to the Tucker Act, 28 U.S.C. §
1491(a)(1) (2006), and the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, and invoke
the Eighth Amendment.[2] See id. at 2 (citing 28 U.S.C. § 2674 and the Tucker Act in
support of jurisdiction and stating that the "claim involves the 8th Amendment"). The
United States (defendant or the government) has filed a motion to dismiss for lack of
subject matter jurisdiction on the basis that "the Court does not possess jurisdiction to
entertain claims that sound in tort." Def.'s Mot. to Dismiss (defendant's Motion or Def.'s
Mot.), Dkt. No. 4, at 1.

Now before the court are plaintiffs' Complaint, filed December 10, 2012, and
defendant's Motion, filed February 8, 2013. Pursuant to the Rules of the United States
Court of Federal Claims (RCFC), plaintiffs had thirty-one days to file a response to
defendant's Motion. See RCFC 7.2(b)(1) (allowing twenty-eight days to respond to a
motion to dismiss); RCFC 6(d) (allowing three additional days when a motion to dismiss
is served by mail). As of the date of this Opinion and Order, plaintiffs have failed to
submit a response. Nevertheless, because the court finds that it lacks jurisdiction for the
reasons stated below, defendant's Motion is GRANTED and plaintiffs' claims are
dismissed.

II.    Legal Standards

A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the RCFC governs motions to dismiss for lack of subject matter
jurisdiction. See RCFC 12(b)(1). Because subject matter jurisdiction is a threshold

---

[2] Plaintiffs also cite to the Judicial Code of 1911, ch. 7, Pub. L. No. 61-475, 36 Stat.
1087, 1135-43 (governing the United States Court of Claims), in support of jurisdiction. See
Fed. Tort Claim (Complaint or Compl.), Dkt. No. 1, at 2. The United States Court of Claims
(Court of Claims) was the predecessor court to this court and a predecessor to the United States
Court of Appeals for the Federal Circuit. Section 145 of the Judicial Code of 1911, which
preceded the Tucker Act, established the jurisdiction of the Court of Claims over "cases not
sounding in tort, in respect of which claims the party would be entitled to redress against the
United States." 36 Stat. 1136. The Judicial Code of 1911 does not provide plaintiffs with a basis
for jurisdiction in this court.

matter, it must be established before the case can proceed on the merits. Steel Co. v. Citizens for a Better Env't (Steel Co.), 523 U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007). Pursuant to the Tucker Act, this court has jurisdiction over "claim[s] against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). Although the Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). Therefore, a plaintiff must satisfy the court that "'a separate source of substantive law . . . creates the right to money damages.'" Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

This court has no authority to hear tort claims against the United States because the Tucker Act expressly excludes such claims from the jurisdiction of the court. See Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997) (citing 28 U.S.C. § 1491(a) and Keene Corp. v. United States, 508 U.S. 200, 214 (1993)); see, e.g., Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1307 & n.5 (Fed. Cir. 2007) (holding that the plaintiff's negligence claims sounded in tort and thus were beyond the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims)); Moore v. Durango Jail, 77 Fed. Cl. 92, 96 (2007) (holding that the Court of Federal Claims did not have jurisdiction over the plaintiff's claim because the "plaintiff's claim of negligence sounds in tort"). The proper forum for federal tort claims is a United States district court.[3] 28 U.S.C. § 1346(b)(1). This court also lacks "jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment is not a money-mandating provision." Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (per curiam) (internal quotation marks omitted).

Further, the Court of Federal Claims has jurisdiction only over claims against the United States. 28 U.S.C. § 1491(a)(1); see United States v. King, 395 U.S. 1, 2-3 (1969) (stating that the jurisdiction of the Court of Federal Claims "has been limited to money claims against the United States Government" since Congress created the court in 1855); RCFC 10(a) (stating that the title of the complaint must designate the United States as defendant); see also RCFC 4 rules committee note (2002) (stating that "only the United States is properly the named defendant").

---

[3] United States district courts have exclusive jurisdiction to hear tort claims against the United States, including all claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (2006). See 28 U.S.C. § 1346(b)(1). However, before a Federal Tort Claims Act claim may proceed in a district court, the claimant must first present his claim to the appropriate federal agency. Id. § 2675(a). Only after the appropriate agency issues a final decision denying a Federal Tort Claims Act claim may it be brought in a United States district court. Id.

In evaluating a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1), the court must accept as true the nonmoving party's allegations of fact and draw all reasonable inferences in the nonmoving party's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). Nevertheless, plaintiffs have the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Reynolds, 846 F.2d at 748. Pro se plaintiffs are "[held] to less stringent standards than . . . lawyers," see Haines v. Kerner, 404 U.S. 519, 520 (1972), but must still meet basic jurisdictional requirements, Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987); see Henke, 60 F.3d at 799 ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures . . . ."). If the court determines that it lacks jurisdiction, it must dismiss the action. RCFC 12(h)(3).

B.     Transfer to District Court

When the court dismisses a case for lack of jurisdiction, it has an obligation to determine whether transfer to another federal court that may have jurisdiction over the claims is appropriate. See 28 U.S.C. § 1631 (stating that "the court shall, if it is in the interest of justice, transfer [a case over which it lacks jurisdiction] to any other such court in which the action or appeal could have been brought at the time it was filed or noticed"); Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1375 (Fed. Cir. 2005) (recognizing "the statutory requirement that transfer be considered to cure jurisdictional defects"); see also 28 U.S.C. § 610 (defining "courts" to which transfer is allowed under 28 U.S.C. § 1631).

C.     Authority to Order Sanctions

The court has "inherent powers enabling it to manage its cases and courtroom effectively and to ensure obedience to its orders." Pac. Gas & Electric Co. v. United States (PG&E), 82 Fed. Cl. 474, 480 (2008) (internal quotation marks and brackets omitted); see In re Bailey, 182 F.3d 860, 864 (Fed. Cir. 1999) ("The United States Supreme Court and federal courts of appeals have repeatedly recognized that regulation of attorney behavior is an inherent power of any court of law and falls within the discretion of such court."). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44-45 (internal citation omitted).

The court also has authority to sanction based on Rule 11 of the RCFC.[4] Rule 11 requires an attorney or unrepresented party to make certain certifications about any documents presented to the court, based on "an inquiry reasonable under the circumstances." RCFC 11(b). Rule 11 sanctions are appropriate when an attorney or unrepresented party fails to act with "candor and truthfulness" in making such certifications. See PG&E, 82 Fed. Cl. at 478 n.2; cf. RCFC 11(b)-(c) (describing bases for Rule 11 sanctions). "In evaluating whether the signer of a filing has violated Rule 11, the . . . court applies an objective standard of reasonableness. . . ." Colida v. Nokia, Inc., 347 F. App'x 568, 571 (Fed. Cir. 2009) (unpublished) (internal quotation marks omitted). In determining whether an anti-filing injunction is appropriate under Rule 11, the trial court "should make findings 'as to any pattern' of behavior, looking to 'both the number and content of the filings as indicia of frivolousness and harassment.'" Hemphill v. Kimberly-Clark Corp., 374 F. App'x 41, 45 (Fed. Cir. 2010) (unpublished) (quoting In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988)).

A court's rules do not displace its inherent power to impose sanctions for bad-faith conduct. Chambers, 501 U.S. at 46. Indeed, this "[inherent] power is both broader and narrower than other means of imposing sanctions." Id. It is broader in that it "extends to a full range of litigation abuses." Id. And it is narrower in that "a court's inherent power to impose attorney's fees as a sanction" is effectively limited to "cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders," as distinguished from "conduct which merely fails to meet a reasonableness standard." Id. at 47; cf. RCFC 11(b) (imposing a reasonableness standard). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, . . . the Rules are [not] up to the task, the court may safely rely on its inherent power." Chambers, 501 U.S. at 50.

III.    Discussion

    A.    Dismissal for Lack of Subject Matter Jurisdiction

Defendant argues that plaintiffs "cannot meet their burden of establishing subject matter jurisdiction for the Court to entertain this case." Def.'s Mot. 3. Defendant is correct. To the extent that plaintiffs bring suit against defendants other than the United States, see Compl. 1 (listing Eric Holder, M. Martin and Carlos Rivera as defendants on the caption), 3 (describing defendants "as the wardens of F.C.I.LOW"), the Court of

_____

[4] The Rules of the United States Court of Federal Claims (RCFC) generally mirror the Federal Rules of Civil Procedure (FRCP). See RCFC 2002 rules committee note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). RCFC 11 is substantially identical to Rule 11 of the FRCP. Compare RCFC 11, with FRCP 11. Therefore, the court relies on cases interpreting FRCP 11 as well as those interpreting RCFC 11.

Federal Claims lacks jurisdiction over plaintiffs' claims against these other defendants, cf. 28 U.S.C. § 1491(a)(1) (providing the Court of Federal Claims with jurisdiction over certain types of claims against the United States); King, 395 U.S. at 2-3.

Further, even assuming the truth of plaintiffs' allegations and drawing all inferences in favor of plaintiffs, cf. Henke, 60 F.3d at 797; Reynolds, 846 F.2d at 747, the court, for the following reasons, concludes that it lacks jurisdiction over plaintiffs' claims to the extent that they are alleged against the United States and finds that plaintiffs have not met their burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence, cf. McNutt, 298 U.S. at 189; Reynolds, 846 F.2d at 748.

Plaintiffs assert the Tucker Act and the Federal Tort Claims Act as the bases of this court's jurisdiction over their claims. See Compl. 2 (citing 28 U.S.C. § 2674 and the Tucker Act in support of jurisdiction); see also id. at 1 (titling Complaint "Federal Tort Claim"). However, this court lacks jurisdiction over claims brought under the Federal Tort Claims Act; United States district courts have exclusive jurisdiction to hear tort claims against the United States, including all claims under the Federal Tort Claims Act. See 28 U.S.C. § 1346(b)(1). Moreover, cases sounding in tort are expressly excluded from the court's jurisdiction pursuant to the Tucker Act. 28 U.S.C. § 1491(a)(1) (providing for jurisdiction over "claim[s] against the United States . . . not sounding in tort" (emphasis added)); see Brown, 105 F.3d at 623. Plaintiffs characterize their claim as "a claim of negligence." Compl. 1; see also id. at 2 (discussing defendants' "negligence"), 3 (stating that defendants "acted negligently" and "failed to use care that a prudent person exercises"), 4 (similar). Because a claim of negligence is a claim sounding in tort, the Court of Federal Claims lacks jurisdiction over plaintiffs' negligence claim under the Tucker Act. Cf. Souders, 497 F.3d at 1307 & n.5 (holding that the plaintiff's negligence claims sounded in tort and thus were beyond the jurisdiction of the Court of Federal Claims); Moore, 77 Fed. Cl. at 96 (holding that the Court of Federal Claims did not have jurisdiction over the plaintiff's claim because the "plaintiff's claim of negligence sounds in tort"). Therefore, neither the Tucker Act nor the Federal Tort Claims Act provides the court with jurisdiction over plaintiffs' negligence claim.

Plaintiffs also assert that their "claim 'arises under' the VIII Amendment," Compl. 2, but this assertion, too, fails to bring plaintiffs' claim within the court's jurisdiction. Because the Tucker Act does not itself create a substantive cause of action, Jan's Helicopter Serv., Inc., 525 F.3d at 1306, plaintiffs must identify "a separate source of substantive law . . . [that] creates the right to money damages," id. (internal quotation marks omitted). To the extent that plaintiffs attempt to identify the Eighth Amendment as a money-mandating source, see Compl. 2 (stating under the heading "Jurisdiction" that "[t]his claim involves the 8th Amendment"), such an attempt fails, cf. Trafny, 503 F.3d at 1340 (stating that this court lacks "jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment is not a money-mandating provision" (internal quotation marks omitted)).

Because plaintiffs have failed to identify any basis for jurisdiction in this court, cf. McNutt, 298 U.S. at 189 (stating that plaintiffs have the burden of establishing the court's jurisdiction by a preponderance of the evidence); Reynolds, 846 F.2d at 748 (same), and the court cannot infer any other basis for jurisdiction from plaintiffs' Complaint, plaintiffs' claims must be dismissed, see RCFC 12(h)(3). Accordingly, defendant's Motion is GRANTED.

    B.    Transfer Is Not Appropriate

After determining that it lacks jurisdiction over plaintiffs' claims, the court must consider whether transfer to another federal court under 28 U.S.C. § 1631 is appropriate to "cure jurisdictional defects." Cf. Tex. Peanut Farmers, 409 F.3d at 1375; 28 U.S.C. § 1631; id. § 610 (defining "courts" to which transfer is allowed under 28 U.S.C. § 1631). Transfer is appropriate when "the action or appeal could have been brought [in the transferee court] at the time it was filed or noticed," and transfer "is in the interest of justice." 28 U.S.C. § 1631.

Here, the court finds that transfer is not in the interest of justice because plaintiff's have failed to pay the court's filing fee or file an application to proceed in forma pauperis, see supra note 1, and have failed to file a response to defendant's Motion in accordance with the RCFC, see supra Part I. Further, plaintiffs have a history of initiating numerous actions that appear to be without merit, and, because these filings by plaintiffs appear to be part of a pattern of filing in bad faith, see infra Part III.C (discussing plaintiffs' litigation history), it is not in the interest of justice to transfer this case, cf. 28 U.S.C. § 1631.

In addition, plaintiffs' claims against the government likely could not have been brought in a district court at the time their Complaint was filed because plaintiffs have not presented any evidence that they received a final decision from the appropriate federal agency. Cf. id. § 2675(a) (requiring a final decision denying a Federal Tort Claims Act claim at the agency level before the claim may be brought in a district court); see also supra note 3 (describing process for bringing a Federal Tort Claims Act claim in a district court). Although plaintiffs have submitted a request for an administrative remedy to the Federal Bureau of Prisons, see Compl. Ex. 2 (Federal Bureau of Prisons form for request of administrative remedy, dated August 13, 2012), this does not constitute a final agency decision. To receive a final agency decision, plaintiffs would have had to complete a four-step process (used in all institutions run by the Bureau of Prisons): make an informal complaint; file a request for an administrative remedy; appeal to the regional director; and appeal to the general counsel to the Bureau of Prisons. Cf. 28 C.F.R. §§ 542.10-19 (2012) (describing the administrative remedy program); Jordan v. Fed. Bureau of Prisons, No. 09 Civ. 8561(ALC), 2013 WL 1143617, at *3 (S.D.N.Y. Mar. 19, 2013) (describing the four-step process); Compl. Ex. 2 (Federal Bureau of Prisons form for request of administrative remedy, stating, "If dissatisfied with

this response, you may appeal to the Regional Director"). Further, because United States
district courts have exclusive jurisdiction over tort claims against the government, see 28
U.S.C. § 1346(b)(1), no other forum exists to which this claim could be transferred.
Accordingly, the court finds that transfer of plaintiffs' claims against the government
would not be in the interest of justice. Cf. id. § 1631.

To the extent that plaintiffs assert additional claims against individuals other than
the government, see Compl. 1 (listing Eric Holder, M. Martin and Carlos Rivera as
defendants on the caption), 3 (describing defendants "as the wardens of F.C.I.LOW"), the
court has not been able to identify a claim that is cognizable under federal law and finds
inadequate grounds in plaintiffs' Complaint for concluding that plaintiffs have met the
requirements for bringing any state claim against any of the individual defendants in a
diversity action in federal court, cf. 28 U.S.C. § 1332(a) (providing for diversity
jurisdiction in federal court when certain conditions are met); John Birch Soc'y v. Nat'l
Broad. Co., 377 F.2d 194, 197 (2d Cir. 1967) (stating that "diversity of citizenship must
be apparent from the pleadings" in cases based on diversity jurisdiction). Moreover,
claims by both plaintiffs filed in federal court and dismissed as frivolous appear to be
against some of these same individuals. See supra note 1 (describing claims dismissed as
frivolous by plaintiff Tyrone Nunn against Rivera and Martin, and by plaintiff Danny
Sellers against Martin); see also Nunn v. Rivera, No. 1:12cv509, slip op. at 1-2 (E.D.
Tex. Oct. 30, 2012), Dkt. No. 5 (recommending that plaintiff's claim, based on the same
facts as those pleaded in this case, be dismissed pursuant to 28 U.S.C. § 1915(g)).
Therefore, the court also finds that transfer of plaintiffs' claims against any individuals
other than the government would not be in the interest of justice. Cf. 28 U.S.C. § 1631.

C.    Sanctions Warranted

Based on a review of plaintiffs' Complaint and of cases filed by plaintiffs in other
federal courts, plaintiffs' conduct warrants sanction pursuant to the court's inherent
power. Cf. Chambers, 501 U.S. at 50-51 (affirming appeals court finding of "no abuse of
discretion in resorting to the inherent power" even though sanctions pursuant to Rule 11
of the Federal Rules of Civil Procedure could have been employed because only the
inherent power could reach an "entire course of conduct" that "evidenced bad faith and
an attempt to perpetrate a fraud on the court"). Sanctions under the court's inherent
power are more appropriate in the present case than sanctions under Rule 11 of the RCFC
because plaintiffs have not failed to act with candor and truthfulness in their dealings
with the court. Compare PG&E, 82 Fed. Cl. at 478 n.2 ("Because counsel never
attempted to mislead the court nor acted with dishonesty toward the court in a pleading or
filing, RCFC 11 is not an appropriate basis upon which to fashion sanctions or remedies
in this case."), and RCFC 11(b)-(c) (describing bases for Rule 11 sanctions), with
Chambers, 501 U.S. at 50-51 (stating that only the inherent power could provide
authority to sanction an "entire course of conduct" that "evidenced bad faith"). As

described below, plaintiffs' filings demonstrate an entire course of conduct evidencing bad faith. Cf. Chambers, 501 U.S. at 50-51.

Specifically, plaintiff Tyrone Nunn, while incarcerated, has brought numerous claims that were dismissed as frivolous and that appear to have been filed in bad faith. See supra note 1 (citing three previous actions dismissed as frivolous and concluding that, as a result, plaintiff is barred from proceeding in forma pauperis); see also Nunn v. Vasquez, No. 1:13cv97, slip op. at 2 (E.D. Tex. Feb. 26, 2013), Dkt. No. 4 ("[P]laintiff has, on at least four prior occasions, while incarcerated, brought actions or appeals that were dismissed as frivolous, malicious, or for failing to state a claim upon which relief may be granted."); Nunn v. Martin, No. 1:11-CV-571, 2011 WL 7006302, at *1 (E.D. Tex. Dec. 1, 2011) (describing plaintiff as a "serial litigant in [the Eastern District of Texas] and other districts in the states of Alabama and Georgia" and citing five other cases, in addition to the cases cited by this court, as evidence that plaintiff is barred from proceeding in forma pauperis). Plaintiff Tyrone Nunn has also repeatedly filed petitions for a writ of mandamus that demonstrate indicia of bad faith. See In re Nunn, No. 12-14651-E, slip op. at 2 (11th Cir. Oct. 16, 2012) (stating that "Nunn's request for a mandamus order . . . is not warranted because he had the adequate alternative remedy of appealing his convictions and sentences, which he exercised" and dismissing plaintiff's petition as "frivolous"); In re Nunn, No. 12-40257, slip op. at 3 (5th Cir. May 3, 2012) (per curiam) (stating that "Nunn has three times sought mandamus relief only a few weeks, and in this instance only one week, after filing his suit in district court" and warning plaintiff "that he should allow a minimum of six months to pass . . . before he considers whether it is appropriate to move this court for mandamus relief" and that "frivolous arguments, such as the present one, will not be tolerated").

Plaintiff Danny Sellers has filed at least one claim while incarcerated that was dismissed as frivolous, see supra note 1, and has filed other complaints in collaboration with Tyrone Nunn that appear to be frivolous. See Compl. at 1-2, Sellers v. Vasquez, No. 1:13cv21 (E.D. Tex. Jan. 17, 2013), Dkt. No. 1 (listing Danny Sellers and Tyrone Nunn, among others, as plaintiffs[5]); Sellers v. Vasquez, No. 1:13cv21, slip op. at 4 (E.D. Tex. Feb. 13, 2013), Dkt. No. 4 (recommending that the complaint be "dismissed as frivolous and for failing to state a claim upon which relief may be granted" in magistrate judge's report not yet ruled on by the court). Moreover, both plaintiffs have had claims dismissed for failure to prosecute after failing to comply with court rules requiring payment of filing fees. E.g., Entry of Dismissal at 2, Nunn v. United States, No. 12-14665-A (11th Cir. Oct. 26, 2012); Entry of Dismissal at 2, In re Nunn, No. 12-12608-A (11th Cir. July 10, 2012); Sellers v. Rivera, No. 1:12-CV-460, slip op. at 2 (E.D. Tex. Jan. 2, 2013), Dkt. No. 9 (recommendation of magistrate judge adopted by the court).

---

[5] The court notes that the claims of each plaintiff were severed and that, although Danny Sellers' claims proceeded under the case number originally assigned to the case, the claims of the remaining plaintiffs were assigned separate case numbers. See Order Severing the Case at 2, Sellers v. Vasquez, No. 1:13cv21 (E.D. Tex. Feb. 13, 2013), Dkt. No. 2.

Through this course of conduct, plaintiffs have demonstrated "conduct which abuses the judicial process." Cf. Chambers, 501 U.S. at 44-45. Such conduct is the proper subject of an exercise of this court's discretion to "fashion an appropriate sanction" pursuant to its inherent power. See id. at 44.

IV.    Conclusion

For the reasons stated, the court concludes that it lacks jurisdiction over plaintiffs' claims and that the transfer of any of plaintiffs' claims is not in the interest of justice. Defendant's Motion is GRANTED and plaintiff's Complaint is DISMISSED. The Clerk of Court shall ENTER JUDGMENT in favor of defendant.

Further, the court finds that plaintiffs have filed suit in this court in bad faith and deserve to be sanctioned pursuant to the court's inherent power. The office of the Clerk of Court SHALL REFER, unfiled, any future proposed filing by either of the plaintiffs, together with a copy of this Opinion and Order, to a judge of the court, who will determine if any such proposed filing demonstrates indicia of being filed in bad faith. If so directed by a judge of the court, the office of the Clerk of Court will reject such document for filing.

IT IS SO ORDERED.

EMILY C. HEWITT
Chief Judge

11